### Johanna Chapman et al. v. Emma Chapman.

Delivered May 26, 1897.

#### 1. Common Law Marriage Without License—Second Marriage Invalid.

Where a marriage ceremony without license was celebrated between a man and woman, and they afterwards lived together for several years as husband and wife, a valid common law marriage was effected, and the woman could not, her common law husband still living, contract with another man a valid marriage under license and the forms prescribed by statute.

**2. Same—Homestead Right of Common Law Wife.**

The grant of a homestead donation to a man as the head of a family inures to the benefit of his common law wife, with whom he was not living at the time of the grant, nor at any time during his residence on the land, and not to that of a woman with whom he had contracted an invalid marriage at the time of the grant, and who then lived with him, but who had, prior to her marriage with the deceased, contracted a valid common law marriage with another man, still living and from whom she had not been divorced.

**3. Same—Community Right as Partner of Wife Not Lawfully Married.**

Where a man and woman not lawfully married to each other live together as husband and wife, and acquire personal property by their joint labor, she is, at his death, entitled as a partner to a share of the personal property thus acquired. Following Morgan v. Morgan, 1 Texas Civil Appeals, 315.

APPEAL from Victoria. Tried below before Hon. S. F. GRIMES.

*Fly & Hill,* for appellants.

*A. B.* and *W. M. Peticolas,* for appellee.

JAMES, CHIEF JUSTICE.—The following conclusions of fact were filed by the trial judge: "That about the year 1865 Thomas Chapman and Johanna Chapman were married without license, and that they lived together as man and wife until about the year 1873 and were never divorced. That about that time they separated and have never since lived together. That on May 25, 1878, Thomas Chapman married Emma Chapman by license which was executed by a justice of the peace with all the forms of law. That in 1866 or 1867 Emma was married to one Wade in Victoria County, without license, and that no record of said marriage exists in Victoria County, Texas. That Emma and said Wade were never divorced. That at the time she married Thomas Chapman he told her, Emma, that he was a single man, that he had so assured her, and that she married him; that there is no recorded evidence of the marriage of Tom and Johanna in Victoria County, Texas. That Johanna, from about the year 1880, lived in the neighborhood of Tom and Emma Chapman, asserted marital rights with him, but recognized Emma Chapman as his wife. That from the date of Emma's marriage with Tom until his death in 1894 he and Emma lived together as man and wife. That after said marriage, and while they, Tom and Emma, were living together with Will and Palmer, the sons of Tom and Johanna, they, Tom and Emma, acquired a homestead donation of 160 acres of land granted by the State to Thomas Chapman on December 17, 1889. That this is the land involved in this suit. That this land was so acquired by reason of the fact that at that time Emma was living with Tom as his wife.

"That he acquired it as a married man, and that she and the two sons of Johanna and Tom thus contributed to the acquisition of said real estate by their joint labors. That while they were so living together they acquired by the joint efforts of Tom, Emma, and the two sons all the personal property involved in this suit, except one rifle and one harrow which belonged to Will Chapman, one mule which belonged to

Johanna Chapman, and one cow which belongs to Emma individually. That Emma contributed her labor and services with that of Will and Palmer to the acquisition of this personal property and of the real estate. That Tom and Emma had lived together from the date of their marriage until his death. That Emma lived in the same neighborhood as Tom, and Johanna within two miles. That she knew prior to her marriage with Tom that Tom and Johanna were living together prior to her (Emma's) marriage with Tom. That after the grant of the land to Tom, Johanna lived with her son Will on the land in a house erected on said land, and so continued to reside until the death of Tom, and that she still resides on the land with her son, but that while she lived on said land she, Johanna, never lived or cohabited with Tom, and that at the date of the application for this donation, Tom and Emma had been living together for some eight years."

In addition to the above conclusions, which in all material things were sustained by evidence, except as hereafter stated, it appeared from undisputed evidence that Ed Wade was living when Tom and Emma were married; also that about a year after Tom and Emma moved to the land in question, Johanna came and lived upon the land and remained there until Tom died. The conclusion of the trial judge, that the land was acquired by reason of the fact that Emma was living with Tom as his wife, is not correct or warranted in the sense that the donation was granted with reference to her as the wife.

*Opinion.*—A ceremony of marriage having been performed between Ed Wade and Emma in 1865, followed by their living together as man and wife for a number of years, it constituted a valid common law marriage between them; and so were Tom and Johanna man and wife for like reasons. Chapman v. Chapman, 11 Texas Civ. App., 392; Simmons v. Simmons, 39 S. W. Rep., 639, and cases cited.

Emma was therefore the wife of Ed Wade when in 1878 she married Chapman, it being shown that Wade was alive and they had not been divorced. The question then is, could she under these conditions, Chapman having a wife living, claim property as Chapman's wife. It is clear she could not at common law, where, if either party contracting marriage has a husband or wife living, the marriage is void, and no marital rights can be founded on the relation.

We have early decisions in this State in which a woman sustaining the relation of wife, in ignorance of the fact that the man had a wife living, was held entitled to full community rights in the property acquired during such relation. Smith v. Lee, 18 Texas, 142. It was also held at that time that when she was aware of the fact that he had a wife living abroad, she was nevertheless entitled to share as a wife in certain property which had been granted by the State with particular reference to the family as it was constituted here. Babb v. Carroll, 21 Texas, 766.

Since 1840 the common law has been in force in this State, and it may be, as has been stated in some of our decisions, that its princi-

ples should now govern questions of this kind, but from the view we take of the case it is not necessary to so decide. Even the rule of the Spanish law on the subject would preclude Emma from asserting a claim to property as wife of Chapman. By such rule, where the woman was ignorant that the man had a wife living, she was not only innocent of crime, but had all the rights, incidents, and privileges pertaining to lawful marriage so long as this ignorance continued. Lee v. Smith, 17 Texas, 146. She must have innocently sustained the relation of wife, that is, been ignorant of any impediment thereto. Bouvier's Law Dict., under "Putative Marriage." The facts here are that she and Ed Wade had a marriage ceremony in 1865, after the war, and lived together thereafter as man and wife for years, when, as she testified, she quit him. The only excuse she offers for doing this and marrying Chapman is that she did not think she was married to Wade because there was no license. The testimony we think shows clearly all the essentials of a valid common law marriage. At the time she married Chapman, Wade was living, and it is not pretended she did not know the fact. Her marriage with Chapman can not be classed as a putative marriage, unless she be allowed to say that she was ignorant that she herself was the wife of another at the time. She must, we think, be held to a knowledge of her own status. Had she married Chapman under some mistake of fact, believing herself single, or that Wade had died, or that the relation had been terminated by a decree of divorce, although afterwards it proved to be void (Morgan v. Morgan, 1 Texas Civil Appeals, 315), she would have stood in a better position to assert claim as wife of Chapman. She knew all the facts in reference to herself and Wade which made them man and wife. If then there was any mistake on her part, it was in believing she had never become the wife of Wade—a mistake of law. We are of opinion that public policy would forbid the recognition of a principle by which a doubt or disbelief of the legality of one's marriage may be the basis of good faith in contracting another marriage. If her marriage is legal, she must be held to know it, and to know that she was not becoming the wife of the party with whom she contracted the second marriage.

The homestead donation was granted by the State to Chapman as the head of a family. It was not granted with particular reference to Emma as his wife. He being the head of a family without her, his settlement or residence thereon for three years entitled him to it, if she had not been there at all. As a matter of fact, the wife Johanna lived upon the land during the greater part of the necessary period of occupation. Appellee had no marital rights by virtue of her relation with Chapman, as against the real wife, and the homestead donation vested in his wife and children at his death.

We therefore conclude that the District Court erred in recognizing Emma's right to half of the land; it should all have been adjudged to plaintiffs. But we believe there was no error in the disposition made of the personalty. As an individual or partner, Emma seems to have con-

tributed to the acquisition of this property, and is entitled to a share thereof. Morgan v. Morgan, 1 Texas Civ. App., and cases cited. Succession of Llula (La.), 10 So. Rep., 406. Chapman contributed his own labor and that of his sons' and Johanna's also. Without any guide in the evidence to show how much he contributed and how much Emma contributed in acquiring this property, the presumption would be that each was entitled to one-half.

The judgment will be reformed so as to award the land to plaintiffs, and the cause will be remanded as to the personalty and to effect partition thereof.

*Reversed and remanded.*

Writ of error refused.

[NOTE BY REPORTER.—In Chapman v. Chapman, 11 Texas Civil Appeals,, 392, which was a contest between Emma and Johanna over the right of administration upon the estate of Thomas Chapman, it was decided by the Court of Civil Appeals for the First District that the marriage between Thomas and Emma was void, and that the right of administration was with Johanna as the lawful wife.]