VIRGINIA WALKER LAWSON ET AL. v. CAROLINE LAWSON.

Decided June 2, 1902.

**1.—Husband and Wife—Illegal Marriage—Partnership Property.**

Where plaintiff in good faith lived with defendant as her husband, believing him to be such, but there was no legal marriage, their relation, as to property acquired by their joint efforts during its existence, is treated as a partnership, and the putative wife is entitled to an equal share of the property, regardless of the amounts respectively contributed by each party.

**2.—Same—Fraudulent Conveyance.**

Where, after the dissolution of the invalid marriage relation with plaintiff, defendant entered into a marriage and conveyed to his wife the property acquired during the former relation, without consideration, and for the purpose of putting it out of the reach of possible claimants, such conveyance was void as to plaintiff.

**3.—Same—Limitations.**

Where defendant ceased to treat plaintiff as his wife, and thereafter lived in adultery with his present wife and others, but did not cease to provide for plaintiff, and allowed her a house on the land in which she continued to live,

subsisting out of the common fund, and for more than ten years after such desertion she took no legal steps because she hoped plaintiff would return to his allegiance to her, limitation did not run against her rights in the property.

**4.—Same—Repudiation.**

The act of defendant in conveying the land to another, the possession not being surrendered, and the land afterwards reconveyed to defendant, was not necessarily such a repudiation of plaintiff's rights as would set in motion the statutes of limitation.

Appeal from the District Court of Fort Bend County. Tried below before Hon. Spencer C. Russell.

*Hutcheson, Campbell & Hutcheson* and *Pearson & Pearson*, for appellants.

*James Slyfield* and *F. M. O. Fenn*, for appellee.

GILL, Associate Justice.—This suit was instituted on the 27th day of August, 1900, by the plaintiff, Caroline Lawson, against the defendant, Harry Lawson, for divorce and partition of community property. Virginia Walker Lawson and her four minor children were made parties defendant as claimants of the property in controversy. In respect to the property, plaintiff pleaded in the alternative that if the court should hold she was not the lawful wife of Harry Lawson, then an undivided half interest therein should nevertheless be adjudged to her because the property was acquired by the joint labors of herself and the defendant, Harry Lawson, while living together as husband and wife in the honest belief that they had been legally married.

Defendants Harry Lawson and Virginia Walker Lawson answered jointly by exceptions, general denial, and pleaded the statute of limitations of two and four years.

D. R. Peareson, appointed by the court as guardian ad litem for the minor defendants, adopted the answer of Harry and Virginia and filed also a general denial.

Upon this state of the pleadings a trial was had before the court without a jury, and the court adjudged that the plaintiff had never been legally married to Harry Lawson and the prayer for divorce was refused. But the court found, as hereinafter more fully shown, that the property had been acquired by the joint labors of Caroline and Harry while living together in the honest belief that they were husband and wife, and that as the evidence furnished no guide by which to determine the proportions in which each respectively contributed to its acquisition, plaintiff should be adjudged the owner of an undivided half interest therein and have her decree of partition.

Only the minor defendants through their guardian ad litem have appealed.

The conclusions of fact prepared and filed by the trial judge find sufficient support in the evidence, and contain such a clear and concise

history of the case that we are content to adopt them and here set them out in full:

"Prior to the emancipation, the woman Caroline, who is the Caroline Lawson, plaintiff in this case, and one Alf Woods were the slaves of one Smith; that in the manner usual among slaves and with the consent of their master, the said Caroline and Alf lived together as husband and wife, and were such as near as slaves could be; that after emancipation they continued to live together in such relation for several months, until about Christmas, 1865; that then, or shortly thereafter, Alf quit Caroline, and afterwards, some time in 1867, he married one Rachel ———— in due form of law.

"Thereupon and in the same year Caroline and Harry Lawson, the defendant, made and entered into an agreement to be man and wife, and thereafter lived together as such and were known and regarded as such in the neighborhood in which they lived, and held themselves out to the world as such until about 1889 or 1890, when Harry forced Caroline to leave the house where they lived. He let her occupy a house on the same premises until about 1899, but did not further live with her or in any way treat her as his wife.

"All the property in controversy was acquired by the joint effort of Caroline and Harry in the same manner as if they had been actually husband and wife, but in what proportion their respective labors contributed to such accumulation, I am unable to say.

"Alf Woods died in 1897 or 1898.

"From all the facts and circumstances in the case, I find that in entering into the contract of marriage with Lawson, Caroline did so in the utmost good faith, not knowing or believing that she was the wife of Woods, or that her living with him after emancipation would, in law, act as a ratification of her slave marriage with him, and that from 1867 to 1890, she was the de facto wife of Lawson. From the date of his marriage with Rachel until his death Woods lived with her in the same general neighborhood as did Caroline and Lawson, and there is nothing to show or indicate but that Caroline throughout this time was aware of the fact that Woods was still alive.

"I find that in about 1899, and several years after driving Caroline off, and a year or two after the death of Woods, Lawson married in due form Virginia Walker, by whom he had already had three illegitimate children, all of whom, together with a child born since their wedlock, are the defendants in this cause, and that about a week or ten days before the institution of this suit Lawson conveyed to his then wife and the said four minor children the 309 acres of land and the fifteen or sixteen head of cattle and horses which had been acquired during his relationship with Caroline, and through their joint efforts, and which are the effects in controversy herein.

"That the said conveyance was without consideration, and was made by Lawson to keep anyone who might have claims upon him from seizing said property."

Appellant contends that if it be conceded that the fact conclusions find sufficient support in the evidence the judgment nevertheless is wrong.

First.   Because even if plaintiff believed she was the lawful wife of Harry Lawson she knew all the facts, and as her belief rested in a mistake of law she can not be heard to predicate good faith thereon and recover according to the measure of the rights of a lawful wife.

Second.   If the first contention is unsound and she may be accorded the consideration to which good faith would entitle her, the burden would nevertheless rest upon her to show by clear and unequivocal proof the amount of her earnings which were invested in the property, thus establishing a resulting trust in her favor, and the findings of the court affirmatively show that no guide can be found in the evidence by which the amount can be ascertained.

In the earlier decisions of this State the de facto wife was under certain circumstances accorded the property rights of a wife notwithstanding her knowledge of the invalidity of the relation. This rule was applied by reason of the peculiar wording of the early laws governing land donations from the State on the faith of occupancy by families and for other reasons growing out of the Spanish laws of marriage.   Babb v. Carrol, 21 Texas, 266; Lewis v. Ames, 44 Texas, 345; Yates v. Houston, 3 Texas, 433.

The reason for the rule does not apply to cases such as this, and now the courts refuse to award anything to a pretended wife who by reason of her knowledge of the illicit relation occupies the position of an adulteress and a breaker of the laws.   In such cases the courts will leave the parties as they find them, on the same principle that they refuse to enforce any other contract which by reason of its objects or the nature of the consideration upon which it rests is violative of law or against public policy.

If the plaintiff is in such a position, she can neither be accorded the rights of a wife nor will the courts declare a resulting trust in her favor nor allow her the interest of a partner, however clear the proof may be, if to do so they must base the judgment upon the unlawful contract.

In the case at bar, inasmuch as plaintiff was never the lawful wife of Harry Lawson she could not in any event be entitled to the full property rights of a wife, such as homestead rights in a homestead the separate property of the husband, or a one-third life estate in his separate realty.   But if in good faith she has entered into the relation the courts will not refuse her the just fruits of the labor of her hands and permit the husband, who is equally guilty, if either is, to appropriate the partnership earnings to his own use.

That this distinction has been recognized is clear from the opinion in Chapman v. Chapman, 41 Southwestern Reporter, 543, cited by appellant, where the court refused to award to the putative wife the full rights of a wife in property which was a donation by the State to a

husband and to the acquisition of which she contributed nothing, but did give to her a partnership interest in personal property acquired by their joint efforts during the existence of the relation.

It would seem that good faith, whether resting in mistake of fact or mistake of law, is enough to authorize the courts to treat the relation as a partnership upon proof that something was actually contributed by each to the acquisition of the property claimed.

What feature, then, do we find in this case which ought to induce the courts to treat plaintiff as a criminal, a breaker of the laws, a willing party to a contract involving a shameless and debauching relation between the sexes?

The record shows that Caroline and Alf Woods were negro slaves. That they lived together as husband and wife during the last years of slavery with the consent and approval of their master. This marriage was of no avail unless ratified after emancipation. It has been held that a continuance of the relation after emancipation is sufficient evidence of ratification and constitutes a common law marriage. The court found that the two did thus live together after emancipation, thus furnishing the requisite evidence of ratification, and that this fact rendered her attempted marriage with Harry Lawson in 1867 a nullity. Alf Woods, her slave husband, evidently regarded the slave marriage as without binding force, for in 1867 he married another in due form of law and continued to live with her as his wife until his death in 1897, residing in the same neighborhood as the parties to this suit. So lived Caroline and Harry, joining the same church, attending it together as husband and wife, recognized as such by their neighbors, and evincing every evidence of their firm belief in the legality of their relation. They were of middle age at the date of their emancipation, and were clothed with freedom and thrown upon their own responsibility, doubtless with but vague notions of the laws in general and a dense ignorance of the laws of marriage.

Indeed it may be truly said that at that time our courts had announced no clear views upon the subject of slave marriages. It was a problem yet to be worked out, and for years thereafter many of the questions growing out of the relation remained unsettled. See Cumby v. Henderson, 6 Texas Civ. App., 521.

This being true, the right of the putative wife as to property thus acquired has appealed strongly to the courts, and many cases might be cited not involving the exact question which contain dicta clearly indicating the tendency of the courts toward the now established doctrine. To deny her any interest has appeared so manifestly wrong that the courts have not been slow to discover and apply principles of law under which she might be consistently protected.

The almost perfect analogy between the marital relation in Texas and ordinary partnership furnished an easy solution of the difficulty, so that now when it is once ascertained that the relation is not tainted with conscious guilt the courts can proceed with small difficulty and

adjust the property rights according to legal principles which are new only in the sense that they have found a new application. In Morgan v. Morgan, 1 Texas Civil Appeals, 315, Justice Head, in his discussion of the principles under which the putative wife acting in good faith might have her just rights secured to her, entered into a thorough review of the authorities and held that the tendency of our courts, as evidenced by the decisions involving kindred questions, justified the conclusion that she should be treated as a partner as to all property shown to have been acquired by their joint efforts.

In inquiring into the nature of the partnership he looked to the contract by which the parties undertook to form the relation of husband and wife, and pursued a line of reasoning which strongly commends itself to our judgment. The contract which the parties intended to make would, if they had the legal capacity to make it, have formed the marital partnership which would have entitled each to a half interest in all property acquired by their joint efforts without reference to the proportion contributed by each. Such is the meaning of the contract they intended to make. How then can it be justly held that the property thus acquired should belong to one any more than to the other?

The parties having placed themselves in an attitude to have the contract looked to in measuring their rights, there appears to us no reason why the nature of the agreement should not be made the test of the nature of the partnership. In this view of the case the plaintiff would not be held to the strict proof required in establishing a resulting trust in property, the title to which had been taken in another's name. In this case the requirement is satisfied by full proof of the nature of the contract made, and that the property was acquired by their joint efforts during the continuance of the partnership relation. The rights of the parties being fixed by the contract of partnership, it would devolve upon neither to trace the funds into the property and show the exact amount invested. It is enough to show, as in this case, that the parties were each without means at the inception of the relation, and that gradually as a result of their joint efforts the property sought to be partitioned had been acquired.

What has been said disposes of both objections set out above and the opinion in Morgan v. Morgan, supra, renders it unnecessary to further review the authorities.

The case of Harris v. Hobbs, 54 Southwestern Reporter, 1085, grew out of illicit relations between a white man and a negro woman, and is not in point upon either proposition.

Chapman v. Chapman, supra, while containing expressions which indicate that the rights here contended for could not be supported by good faith resting in a mistake of law, after all went no further than to hold that under the facts of that case the putative wife owned no interest in the real estate to the acquisition of which she had contributed nothing. The fact that the putative wife was therein treated as an equal partner in personal property acquired by their joint efforts,

gives the case a certain value in support of the propositions we have announced. Routh v. Routh, 57 Texas, 600, is reviewed and distinguished in Morgan's case, supra. The objections discussed are untenable.

By the seventh assignment appellant assails as unsupported by the evidence the finding of the court that the property was acquired by the joint efforts of plaintiff and Harry Lawson. As we have seen the evidence is ample to show that the property was acquired while the parties were living together as husband and wife. The record does disclose, however, a serious conflict as to whether Harry paid Caroline wages as he did other laborers, but there is ample evidence that he collected her wages when she worked for others, and we think on the whole the judgment should not be disturbed upon this issue.

The court did not err in holding that Harry Lawson's conveyance to his wife Virginia and her children was without consideration. It was not an antenuptial settlement, but a gift, and the motive was to put the property out of the reach of possible claimants against him.

The question of limitation is a serious one. Harry Lawson ceased to treat Caroline as his wife in 1888, and thereafter lived in adultery with his present wife and others. He did not, however, cease to provide for Caroline, but gave her a house on the land in controversy in which she continued to live, subsisting out of the common fund. If she still regarded him as her husband his acts amounted from her standpoint to no more than cruelty and disloyalty on the part of the husband, and she testifies she took no legal steps for the protection of her rights, because she hoped he would return to his allegiance to her. We should also bear in mind that he did not repudiate her claim to the property, but continued to permit her to enjoy a joint possession with him.

On October 21, 1895, Harry Lawson conveyed to J. R. Fenn the land in controversy for a recited consideration of $3500. On June 11, 1898, the land was reconveyed by Fenn to Lawson, the consideration recited being the same. The evidence does not show that possession was surrendered to Fenn.

Appellant insists that the deed to Fenn was a repudiation of the rights of Caroline, but in our judgment this by no means follows as an inevitable conclusion. If she believed him her husband he was acting within his rights as such. If he was not, the contract of partnership properly construed gave him the right to convey and receive the consideration for their joint benefit. Of the $3500 promised him by Fenn $200 only was paid, and it was agreed that when the $200 was paid back there should be a reconveyance. The conveyance back in 1898 was a compliance with this agreement. Viewed in this light we do not think these conveyances set the statute in motion as against Caroline.

It is contended also that her right to the personalty is barred. The

testimony does not disclose any distinct repudiation of her rights on the part of Harry and his possession until such repudiation was not necessarily adverse. Upon his marriage with Virginia and his conveyance to her and her children the suit was promptly brought, and we think under all the circumstances in ample time to preserve her rights against the bar of limitation.

Appellee has cross-assigned errors, but they affect mainly the question of her right to divorce, and as Harry Lawson is not a party to this appeal they do not require our notice.

Because we have found no error in the judgment, it is in all things affirmed.

*Affirmed.*