**Earl MEADOR et al., Appellants,**

**v.**

**Julia IVY, Appellee.**

**No. 14381.**

Court of Civil Appeals of Texas.

San Antonio.

April 28, 1965.

Werner A. Gohmert, Alice, for appellants.

Lloyd, Lloyd, Dean & Ellzey, Alice, for appellee.

BARROW, Justice.

Julia Ivy, appellee herein, brought this suit against Earl Meador, Administrator of the Estate of John Meador, Deceased, Mrs. Tennessee Meador, his surviving widow, and their five sons, who are appellants herein, and the First National Bank of La Feria, seeking reformation of a depository contract between John Meador and the Bank, and for the proceeds of a savings account controlled by said contract. The Bank interpleaded the amount of the savings account into the registry of the court. Appellee also sought judgment for one-half of the personal property belonging to John Meador on his death, which property was allegedly accumulated from a trailer business engaged in jointly by Meador and appellee. Judgment was rendered upon a jury verdict[1] whereby appellee was award-

---

1. JURY VERDICT:
   1. The money and property of John Engram Meador at the time of his death was acquired, in whole or in part, through the labors of Julia Ivy in connection with John Engram Meador, working to-

ed all the proceeds of the savings account and one-half of other property owned by Meador at the time of his death, and the costs, including an attorney's fee for the Bank, were taxed against the surviving widow and children jointly.

John Meador and Julia Ivy lived together in a meretricious relationship from 1938 until his death in June, 1961. Each was married to other persons when they commenced living together, and although appellee divorced her husband in 1941 or 1942, John Meador never divorced his wife, Tennessee. This fact was known to Julia and she therefore concedes that she and John did not have a putative marriage.

Prior to January 9, 1961, Meador had a checking account in his name with the La Feria Bank. On this date, he opened the savings account in controversy in his name and transferred all the proceeds of his checking account to the savings account. On January 17, 1961, he added funds to his savings account and at the same time Julia Ivy's name was added as an authorized signature to withdraw funds from this account. NO PROVISION WAS MADE FOR RIGHT OF SURVIVORSHIP. Appellee asserts, however, and the jury found that Meador intended to give her a right of survivorship in this account, and the judgment reformed the depository contract to so provide.

■ Sec. 46 of the Probate Code, Vernon's Ann.Civ.Stats., authorizes a joint right of survivorship by an agreement in writing of the joint owners of property. Any earnings of John Meador were community property of John and Tennessee Meador. Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565 (1961). It has been held that a husband may, in the absence of fraud

upon his wife, subject community property to a right of survivorship in favor of a third person by making a contract for the benefit of the latter. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962). See also 13 Baylor Law Review 113. It is seen that there is no written agreement between Meador and the Bank authorizing right of survivorship, and therefore appellee seeks to reform the unambiguous depository contract.

■ It is settled law that in order to reform an unambiguous instrument, it must be shown that same was executed through the mutual mistake of the parties to the contract, or else that there was a mistake on one side induced by fraud on the other. McKee v. Douglas, Tex.Civ.App., 362 S.W. 2d 870, wr. ref. n. r. e.; Holchak v. Clark, Tex.Civ.App., 284 S.W.2d 399, wr. ref.; Ward v. Gohlke, Tex.Civ.App., 279 S.W.2d 422, wr. ref.; 49 Tex.Jur.2d, Reformation of Instruments, § 18. The depository contract was between Meador and the La Feria Bank. Davis v. East Tex. Sav. & Loan Ass'n. of Tyler, Texas, 163 Tex. 361, 354 S.W.2d 926 (1962); Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470 (1945).

■ There is no allegation or proof of a mistake on the part of the Bank. Appellee pleaded only that she and Meador were mistaken in the legal effect of the signature card. She testified Meador said he wanted her name on the signature card in case something happened to him, and that neither she nor Meador read the card before she signed it. Mr. Rilling, who operated a trailer camp where the parties had lived for several years, testified that he did not like to see John Meador carry large sums on his person, as was Meador's

gether for a common purpose as co-owners.

2. Fifty per cent of the value of the money and property in question was attributable to the labors of Julia Ivy, as a co-owner.

3. At the time Julia Ivy and John Engram Meador signed the signature card

at the First National Bank of La Feria on January 17, 1961, John Engram Meador intended that the said funds be placed in a joint tenancy account with right of survivorship payable at the death of either John Engram Meador or Julia Ivy to the survivor of them.

practice, and that he urged Meador to open an account like one Rilling and his wife had at the La Feria Bank so that Julia could have control of the money if something happened to Meador. Rilling further testified that Meador subsequently told him that he had opened an account like Rilling's. The cashier of the Bank did not testify to any mistake on the part of the Bank as to what was intended. It is thus seen that there was no mutual mistake to justify reforming the unambiguous depository contract to provide for a survivorship agreement and to entitle appellee to these funds. Smith v. Liddell, 367 S.W.2d 662 (Tex. 1963); Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447; Reserve Life Ins. Co. v. Goodloe, Tex.Civ.App., 316 S.W.2d 443, wr. ref. n. r. e.; 13 Tex.Jur.2d, Contracts, §§ 256, 259.

■ The judgment of the trial court also awarded appellee a one-half interest in and to $3,000.00 which Meador had on deposit with a bank in Sandia, Texas, a Series E. Savings Bond in Meador's name, in the amount of $650.00, and a 1950 Oldsmobile Sedan. This decree was based upon the jury's findings that all Meador's property had been acquired through the joint labors of appellee and Meador working together for a common purpose as co-owners, and that 50% thereof was attributable to the labors of appellee. Appellee alleged that from about 1941 until Meador's death, he and she were engaged in the business of buying, repairing and selling house trailers, and that all assets accumulated from such business were held in Meador's name. Further, she had done at least half of the work in this business and therefore half of the assets of same belonged to her.

Neither appellee nor Meador owned any property at the time they commenced living together. Meador was in the road construction business and they moved around on various jobs in South Texas until World War II started. During the war Meador worked for various air fields in the San Antonio area, and also commenced buying and selling second-hand trailers. After the war, Meador and appellee bought, repaired and sold second-hand trailers in the Rio Grande Valley and in San Antonio. They moved around to various trailer camps in this line of work until a few months prior to the death of Meador, when they moved to Orange Grove in Jim Wells County and lived in a trailer camp purchased by appellee. This land was paid for by appellee from a bank account in her name in which were deposited funds she had inherited and which had been given to her by Meador.

There is evidence that in addition to keeping house for Meador, appellee did much of the actual painting and repairing of the second-hand trailers, particularly in the last few years when Meador's health declined. All of the trailers were in Meador's name and he controlled all the money realized from the sale of same. Meador did not assert a partnership on his income tax return, and appellee did not make a return. Meador gave appellee money for household expenses and occasionally gave her other sums which she deposited in her own bank account. He also gave her the trailer in which they were living at the time of his death, as well as another small trailer located at Orange Grove.

It is seen that there is no pleading or evidence of any partnership agreement between appellee and Meador. In this respect the facts in Lovell v. Lovell, Tex.Civ.App., 202 S.W.2d 291, no wr. hist., are very similar to those before this Court. There the trial court's findings, similar to those of the jury in our case, were set aside as being without support in the pleadings or evidence. It was said: "Partnership is a creature of contract. 'As between the parties themselves there must be a voluntary agreement and an actual intention to become partners.' 32 Tex.Jur. 234. It is not pleaded that any such agreement was expressly or impliedly made by the parties." It was further held that there was no evidentiary basis for a finding that by express contract or implied understanding did the parties agree to become partners, nor was

the evidence of that clear and satisfactory nature necessary to support a parol trust.

It is further seen that there is no pleading or evidence to support an express trust. Cf. Cluck v. Sheets, 141 Tex. 219, 171 S.W. 860 (1943). Further, appellee concedes that she cannot and does not assert that the property was acquired during a putative n.arriage relationship. Cf. Hayworth v. Williams, 102 Tex. 308, 116 S.W. 43; Barkley v. Dumke, 99 Tex. 150, 87 S.W. 1147; Hupp v. Hupp, Tex.Civ.App., 235 S.W.2d 753, wr. ref. n. r. e.; Lawson v. Lawson, 30 Tex.Civ.App. 43, 69 S.W. 246, wr. ref.; Morgan v. Morgan, 1 Tex.Civ.App. 315, 21 S.W. 154.

The distinction between the rights of a putative wife and a "pretended" wife is set forth in Lawson v. Lawson, supra. The Court recognized the rights of a putative wife to share in the property accumulated by the couple during this relationship and then said: "The reason for the rule does not apply to cases such as this, and now the courts refuse to award anything to a pretended wife, who, by reason of her knowledge of the illicit relation, occupies the position of an adulteress and a breaker of the laws. In such cases the courts will leave the parties as they find them, on the same principle that they refuse to enforce any other contract which by reason of its objects, or the nature of the consideration upon which it rests, is violative of law or against public policy." The Court then discussed Chapman v. Chapman, 16 Tex.Civ. App. 382, 41 S.W. 533, wherein the woman who had lived as Chapman's wife under a mistake of law was awarded one-half interest in the personalty accumulated during the relationship but none of the realty. The Court in Lawson adopted as the applicable rule, that good faith of the wife in entering upon the relationship, whether resting in mistake of fact or mistake of law, is enough to authorize the courts to treat the relation as a partnership, upon proof that something was actually contributed by each to the acquisition of the property claimed. This rule was approved by the Supreme Court in

Ft. Worth & R. G. Ry. Co. v. Robertson, 103 Tex. 504, 121 S.W. 202, 131 S.W. 400. See also Papoutsis v. Trevino, Tex.Civ. App., 167 S.W.2d 777, wr. dism. Appellee does not assert that she entered into this relationship with Meador in good faith.

It is therefore our opinion that there is neither pleading nor proof to support a judgment for appellee to one-half of the property in John Meador's name at the time of his death.

The judgment of the trial court is reversed and judgment here rendered that Julia Ivy take nothing by her suit, and that the costs be taxed against her.