### CLUCK v. SHEETS et al.
#### No. 4033.

Court of Civil Appeals of Texas. Beaumont.

Oct. 15, 1942.

Rehearing Denied Nov. 11, 1942.

Pitts & Liles, of Conroe, for appellant.
Crawford & Crawford, of Conroe, for appellee.

COMBS, Justice.

Appellant, Mrs. Ruth Hendrix Cluck, brought this suit against one of the appellees, Mrs. Lydia Kallaher and her husband, for title and possession of 25 acres of land in Montgomery County. The other appellees were made defendants on her action for damages' for timber cut and removed from the land. On the verdict of a jury the trial court entered judgment in favor of appellant for one-half of the land, and for the appellee Mrs. Kallaher for one-half of it. No recovery was allowed for timber cut and removed.

Appellant owns the record title to the land. Appellee Mrs. Kallaher claims title to the undivided half interest on the theory that she and G. C. Cluck, from whom appellant acquired the title, owned the land jointly, G. C. Cluck having taken the title in his name as a trustee of her one-half, under an oral agreement that she was to pay one-half of the purchase price and own a half interest in the land.

The alleged trust arose as follows:

In 1928 the land in controversy was deeded to G. C. Cluck, by the Foster Lumber Company for a consideration of $62.50 cash and three vendor's lien notes of $62.-50 each, payable one, two and three years after date. At that time G. C. Cluck and appellee Mrs. Kallaher, then Mrs. Burchard, were living together in Houston. They were not married, her testimony being that he had a wife in another state from whom he had separated some years before, but was not divorced. She testified that it was their intention to get married as soon as he obtained a divorce. She testified that before the land was purchased she and G. C. Cluck went to Montgomery County and inspected the land. They decided to buy it and it was then agreed that the deed would be taken in the name of G. C. Cluck, but that they would joint-

ly pay for the land and she would own a one-half interest in it. Following the purchase in 1928 they moved on it and built a small dwelling house. They then cut and sold cord wood from the land until the latter part of 1929 when they moved away, she going to Memphis, Tennessee, and he to Mississippi. She testified up to the time they moved away they had cut and sold 120 cords of wood at $5 and $5.50 per cord; that the money so realized was used to pay off the purchase-money notes and to repay to a Mr. Bartner the $62.50 advanced for the down payment on the land. Under all of the evidence, Mrs. Kallaher worked as a regular saw hand and laborer in cutting and selling the wood. In September, 1932, G. C. Cluck married the appellant Mrs. Ruth Hendrix Cluck and by deed dated October 2, 1932, he conveyed the 25 acres of land to her as her separate property, reciting a cash consideration of $395 paid out of her separate funds. Mrs. Cluck testified that while the deed was made October 2, 1932, that she in fact bought and paid for the land in August, 1932, before her marriage to Cluck.

The jury found: first, that at the time the title was conveyed from Foster Lumber Company to G. C. Cluck, there was an agreement between G. C. Cluck and the defendant, Mrs. Lydia Kallaher, that title of the land should be taken in the name of G. C. Cluck for the benefit of both of them; and, second, that the wood that was cut and sold by G. C. Cluck and Lydia Kallaher went to pay and did pay the full consideration for the purchase of the land. An issue of innocent purchaser was also submitted which we will discuss later. There were certain other findings which are immaterial.

Both parties moved for judgment on the verdict. The court entered judgment awarding Mrs. Cluck and Mrs. Kallaher each a half interest. Mrs. Kallaher has appealed.

### Opinion.

We quote appellant's second and third propositions:

"Second

"Since any right which Lydia Kallaher may have in the land in controversy is by reason of a resulting trust between she and G. C. Cluck, and the evidence being uncontroverted that she did not pay any portion of the 'Down Payment' on the land, nor that she obligated herself in any manner for the deferred consideration, a resulting trust was not created as a matter of law and the trial court should have rendered judgment in the behalf of the plaintiff for the whole of said land.

"Third

"Since the evidence conclusively shows that Lydia Kallaher, known as Lydia Cluck, did not pay any part of the original purchase price of the land, and evidence failing to show that she traced the proceeds of the sale of wood from the land into the payment of the last vendor's lien note, the trial court erred in decreeing title to an undivided one-half interest to her, but should have limited her interest at the most to an undivided one fourth interest."

The legal principles invoked by these propositions have no application to the facts of this case. It is true in the case of a resulting trust that a transfer of the legal title must occur at the time or subsequent to the furnishing of funds in order to create the trust. And in such case if the asserted trustee is the holder of the legal title at the time the claimant of the beneficial interest made his contribution to the purchase money, then no trust results. 42 Tex.Jur. p. 642, and cases cited; Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847. If this were a case of a resulting trust there might be some question as to whether or not Mrs. Kallaher established with sufficient definiteness that she contributed her one-half of the $62.50 down payment at the time it was paid and the deed taken by G. C. Cluck. But the record before us shows, not a resulting trust, but an express trust in favor of Mrs. Kallaher for her one-half interest in the land. Being an express trust the above-stated rule as to time of payment does not apply. Mrs. Kallaher and G. C. Cluck entered into an agreement prior to the purchase that they would acquire the land jointly and pay for it by their joint efforts, he to take the title in his name as trustee for her to the extent of her interest. This agreement followed by performance created an express trust. 42 Tex.Jur., p. 611 and cases cited. The rule that no trust results from the payment of money to the purchaser of property as a contribution to the purchase price, unless the money was paid prior to or concurrently with acquisition of the property, does not apply to an express trust. 42 Tex.Jur. p. 616; Johnson v. Smith, 115

Tex. 193, 280 S.W. 158; Holmes v. Tennant, Tex.Com.App., 231 S.W. 313.

In this case Mrs. Kallaher and G. C. Cluck went upon the land, and cut and sold cord wood. The jury found that the wood cut and sold went to pay the full consideration for the land. The finding has ample support. That Mrs. Kallaher contributed her full share of the labor in this enterprise was established without dispute. She pulled one end of the saw and helped to haul and load the wood on the cars for shipment.

But appellant contends that Mrs. Kallaher did not establish that all of the purchase-money notes were paid with proceeds of the sale of the wood and therefore she cannot recover on the theory of a trust. Two of the three notes were paid off while Mrs. Kallaher and G. C. Cluck lived on the land. But the last one was not paid off until sometime after they moved from the land and went their several ways, he to Mississippi and she to Memphis, Tennessee. However, the proof shows that they sold two cars of wood only a day or so before they separated and the amount received was more than enough to pay off the note. Mrs. Kallaher testified that G. C. Cluck took all of the money but a few dollars with the promise that he would pay the note. Later he did pay it. Whether or not he used the very money Mrs. Kallaher entrusted to him to make the payment is not material. He was not available and did not testify in the case. Presumably, he kept his promise. But in any case, having paid the note he would not be heard to deny that Mrs. Kallaher contributed her share toward its payment. She complied with her agreement when she consented for him to take the joint funds for payment of the note.

The trial court, over the objection of appellee, submitted an issue as to whether or not Mrs. Cluck was an innocent purchaser. The issue was submitted in "double negative" form, directing the jury to answer it "she was" or "she was not," but they disregarded the instruction and answered it "no." The parties in their brief argue pro and con concerning what the jury intended to find. By a technical construction of the language of the question and answer it may be deduced that the jury found Mrs. Cluck an innocent purchaser by saying "No" which amounted to finding "No, we do not find that she was not an innocent purchaser." Hence by "double negative" she was an innocent purchaser. But there is grave doubt the jury so intended. However, we think the point immaterial. The evidence did not raise any issue of innocent purchaser. Mrs. Kallaher moved back on the land in March, 1932, and lived there continuously until 1936. She so testified, and she was corroborated by Frank Bartner, a disinterested witness. No one testified to the contrary. And since she was in possession Mrs. Cluck had notice of her claim and could not be an innocent purchaser.

Appellant also complains of the refusal of the trial court to enter judgment against the defendants for the value of timber cut and removed from the land. The evidence was to the effect that E. M. Sheets, son of Mrs. Kallaher, cut and sold or sold to the other defendants for cutting and received a total of some $75 to $100 for the timber. Plaintiff did not request the submission of any issue as to these damages. If it was not such issue as was waived by failure to request it, it was such as the trial court could determine. Sheets testified that all the money received for sale of timber was used to pay taxes on the land and to improve it. The trial court presumably so found, and therefore properly denied judgment for this item.

The judgment is affirmed.