RUTH HENDRIX CLUCK v. E. M. (EARL) SHEETS ET AL.

No. 8067. Decided May 26, 1943.
(171 S. W., 2d Series, 860.)·

220

*Pitts & Liles, J. Robert Liles* and *J. L. Pitts,* all of Conroe, for petitioners.

The jury having found by its verdict that the plaintiff was an innocent purchaser of the land in controversy, the trial court erred in refusing to render judgment in her behalf for the whole of the land. North v. Coughran, 108 S. W. 165; Kennon v. Burkhardt, 162 S. W. 483; Hayworth v. Williams, 116 S. W. 43.

*Crawford & Crawford,* of Conroe, for respondents.

*A. W. Morris,* of Conroe, for respondents Hare Brown & Washburn.

MR. JUDGE TAYLOR of the Commission of Appelas delivered the opinion for the Court.

This is a trespass to try title suit brought by Mrs. R. H. Cluck against E. M. Sheets and others to recover title and possession of 25 acres of land in Montgomery County. The opinion of the Court of Civil Appeals, 171 S. W. (2d) 857 states the case fairly. See this opinion for supplemental facts. The land involved was purchased by G. C. Cluck and Mrs. Lydia Kallaher in 1928 pursuant to an agreement made by them to buy it jointly. At the time the agreement was made Cluck and Mrs. Kallaher (then Mrs. Lydia Blanchard) were living together in

Houston. They were not married, either ceremonially or at common law, he having a wife in another state. While residing in Houston Cluck and Mrs. Kallaher went to Montgomery County to inspect the land and decided to buy it jointly, agreeing to take the deed in Cluck's name. The purchase was consummmated March 8, 1928, by the delivery of a deed of that date by Foster Lumber Company, the owner, to G. C. Cluck as grantee, reciting a consideration of $62.50 cash and three vendors lien notes of $62.50 each, payable one, two and three years after date. Soon after receiving the deed Cluck and Mrs. Kallaher moved from Houston to the land and built thereon a small house in which they lived until October 1929. According to Mrs. Kallaher's testimony Cluck then went to Mississippi and she to Tennessee. They corresponded vigorously for a few weeks. He then wrote suggesting she write only once a week. Cluck finally ignored her letters altogether. According to her statement he had promised to marry her as soon as he could get a divorce from his wife; that she endeavored to find out by writing him whether he intended to keep his promise, but never saw him again; that when she concluded he did not intend to keep his promise of marriage she, in March, 1932, moved back upon the land.

Cluck married again in September, 1932, and on October 1st of that year conveyed the land to his wife by warranty deed of that date as her separate property for a recited consideration of $395.00 cash. Mrs. Cluck testified that she purchased the land from him in August, 1932, prior to their marriage in September of that year and we will assume for present purposes that she did. Mrs. Kallaher testified that at the time of the purchase by Mrs. Cluck she (Mrs. Kallaher) was living on the land, having returned to it the preceding March; and that during her absence from the land she had kept it occupied by her representatives who lived on it. She was corroborated in this by the testimony of her claimed representatives.

Mrs. Cluck sued Mrs. Kallaher and others for the land in 1941 and procured a temporary restraining order restraining Earl Sheets (son of Mrs. Kallaher) and others from cutting and removing merchantable timber from the land. Upon the trial the jury found, among other things, that Cluck and Mrs. Kallaher prior to getting the deed had made an agreement that title should be taken in the name of Cluck for the benefit of both; that they moved upon the land and cut and hauled cord wood during the years 1928 and 1929, which was sold by them, and which "went to pay and did pay the full consideration of

$250.00 for the purchase price of said land." Judgment was rendered upon the jury findings vesting title in Mrs. Cluck and Mrs. Kallaher for an undivided one-half interest each in said land, and further that Mrs. Cluck recover nothing by way of damages. The Court of Civil Appeals affirmed the judgment. Writ of error was granted upon Mrs. Cluck's application on the point which alleged that "any right which Lydia Kallaher may have had in the land in controversy is by reason of a resulting trust between her and G. C. Cluck," and that "the evidence being uncontroverted that she did not pay any portion of the 'down payment' on the land," and that she had not "obligated herself in any manner for the deferred consideration," a resulting trust was not created and that the trial court should have rendered judgment for Mrs. Cluck for the whole of the land.

1 ▪ If the facts stated and implied by the language of the point correctly reflected the record it should be sustained. It is settled that payments made after the title is vested will not alone create a resulting trust. In other words, nothing Mrs. Kallaher did by way of jointly improving and paying for the property, or otherwise, in connection with Cluck after the deed was made, *could be effective to create in her favor a resulting trust,* and no trust would arise in her favor merely by virtue of the dealings between her and Cluck, subsequent to the execution and delivery of the deed. Wright v. Wright, 134 Texas 82, 132 S. W. (2d) 847; Hayworth v. Williams et al, 102 Texas 308, 116 S. W. 43, 132 Am. St. Rep., 879. The facts stated and implied by the wording of the point, however, do not fit the case. Upon full consideration of the record it appears that the relief sought by Mrs. Kallaher *does not depend upon the existence of a resulting trust.* She pleaded, among other things, in answer to Mrs. Cluck's petition, "not guilty," and upon the trial established an *express trust* in her favor. The jury found in response to the first special issue that at the time the title was conveyed to G. C. Cluck there was an agreement between him and Mrs. Kallaher that it should be taken in the name of Cluck for the benefit of both. The testimony clearly raised and supported the issue, and the Court of Civil Appeals found in Mrs. Kallher's favor as to its sufficiency to sustain the finding. There was substantial testimony to raise and support the issue and the Court of Civil Appeal's finding of sufficiency forecloses the question here. We are therefore in accord with its holding that the record shows, "not a resulting trust, but an express trust in favor of Mrs. Kallaher for her one-half interest in the land." The parties inspected the land with a view to buying it. The agreement between them was that title be taken in the name of G. C. Cluck *for their joint*

*benefit.* Mrs. Kallaher testified that "we bought it jointly," and that when she and Cluck decided to buy the land he said to her that "it was not necessary for both of us to have it in both of our names; that he would take care of it, and he and I would get married as soon as he got his divorce." The jury found in accordance with this testimony that it was agreed between Cluck and Mrs. Kallaher that in acquiring the land title would be taken in his name. The deed was procured in accordance with the promise of each to the other to buy it jointly and the parties moved upon the land as joint owners of it.

Under the testimony and findings an express trust was created in Mrs. Kallaher's favor for an undivided one-half of the land. Barnett v. Vincent et al, 69 Texas 685, 7 S. W. 525; 5 Am. St. Rep. 98; McAlister v. Eclipse Oil Co., 128 Texas 449, 98 S. W. (2d) 171; Bennett v. McKrell, 135 Texas 557, 144 S. W. (2d) 242; Gardner v. Randall, 70 Texas 453, 7 S. W. 781; Sanders v. Stinnett, 73 S. W. (2d) 637 (wr. ref.) ; Vicars et ux Quinn (Civ. App.), 154 S. W. (2d) 947. The Vincent case supra, is directly in point on the question of the creation of an express trust. The principle is well stated in McAllister v. Eclipse Oil Co., supra. After pointing out that McCall and McAllister acquired the lease in question under a prior parol agreement that it would belong to both jointly and that by the consent of both the lease was made in the name of McCall, the Court says: "Under the settled law in this State, when the lease was executed and delivered in the name of McCall, he took a fee simple title to an undivided one-half interest therein and a title in trust for McAllister to the other one-half interest," citing James v. Fulcrod, 5 Texas 512, 55 Am. Dec. 743 and Gardner v. Randall, supra.

We find it unnecessary to discuss the subsequent transactions between Cluck and Mrs. Kallaher with respect to cutting and marketing the timber, the proceeds of which (the jury found) went to pay for the land. While it was not essential in the present action for title and possession that Mrs. Kallaher establish that she and Cluck jointly earned the money to pay for the land, as found by the jury, the finding was evidentiary as to the agreement pursuant to which they bought it. We are not to be understood, however, as differing from the Court of Civil Appeals in its conclusion that there was substantial support in the evidence for the finding referred to. In fact we are in accord, upon full consideration of the record, with that conclusion.

■ We are in accord also with the holding of the Court of Civil Appeals upon the question as to whether Mrs. Cluck (granting

that she purchased the land from Cluck prior to their marriage in September) was an innocent purchaser of the land. Jones et al v. Siler et al, 129 Texas 18, 100 S. W. (2d) 352. The Court of Civil Appeals holds that Mrs. Cluck was not an innocent purchaser, and the reason assigned therefor (Mrs. Kallaher's occupancy at the time of the purchase) clearly reflects the record on this point. Mrs. Kallaher's testimony that she was living on the land at such time was undisputed and was corroborated by disinterested testimony. We agree with the Court of Civil Appeals in its holding upon the questions discussed in its opinion.

Judgment of the Court of Civil Appeals affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court May 26, 1943.