**Audrey Williams FAGLIE, Appellant,**

**v.**

**Charles E. WILLIAMS et al., Appellees.**

**No. 12690.**

Court of Civil Appeals of Texas, Austin.

June 28, 1978.

Rehearing Denied July 19, 1978.

David L. Tisinger, Roy Y. Martin, Gus M. Hodges, Roger W. Hughes, Austin, for appellant.

Forrest N. Troutman, Sneed, Vine, Wilkerson, Selman & Perry, Austin, Jerry C. Saegert, Austin, for appellees.

O'QUINN, Justice.

In its initial stage this lawsuit, brought in August of 1976 by Audrey Williams Faglie, now appellant, against a daughter and three sons, was a suit in trespass to try title to approximately four acres of land, now in the northwest part of the City of Austin. As amended from time to time, the suit at time of trial in May of 1977 involved two tracts of land, the second consisting of about seven acres, and suit encompassed several defendants, in addition to the four children of appellant.

The case was tried before the court without aid of a jury, and in June of 1977 the trial court entered judgment that Audrey Williams Faglie take nothing by her suit. We will affirm the judgment of the trial court.

As originally instituted, the suit in trespass to try title set up a claim of one-half interest in the four-acre tract, under a number of legal theories, by virtue of a relationship spanning three decades with Mike Williams, who died in 1956. Plaintiff alleged, and at trial it was shown, that the daughter and three sons of appellant sold the four acres to a limited partnership, engaged in land development, in 1975 for $156,300, retaining a vendor's lien, secured by deed of trust.

By amendments subsequent to the initial filing, plaintiff below alternatively sought recovery of the value of improvements placed by her on the property. Plaintiff also sued for a share in the proceeds of sale by the children of an adjoining tract of seven acres, sold by them in 1967 for $12,-

000. Defendants ultimately made parties included the four children by Mike Williams, the limited partnership, and others acting as trustees or in other capacity.

The record is voluminous, consisting of 665 pages in the statement of facts and 583 pages in the transcript. Numerous witnesses testified, in person and by deposition, and extensive documentary, photographic, and other graphic and instrumental evidence was introduced at trial. The controlling issues in this case grew from, or are interwoven in some fashion with, the relationship between Audrey Williams Faglie and Mike Williams, the natural parents of the four defendants so far designated as the daughter and three sons of the couple.

The record reveals a succession of marriages, divorces, and deeds, but the legal status of the relationship between Audrey Williams Faglie and Mike Williams in the years from their marriage in 1930 to Williams' death in 1956 is labyrinthine and in most aspects eludes classification. Harsh circumstances, arriving in this country with the stock market crash of 1929 and extending through the 1930's, purportedly made expedient from the outset this starkly strange and unconventional union. As the testimony at trial unfolded, this union came more and more to find description in the words of W. Somerset Maugham, an articulate witness of life who observed, "It is not difficult to be unconventional in the eyes of the world when your unconventionality is but the convention of your set." (*The Moon and Sixpence*, ch. 14).

Appellant and Mike Williams were ceremonially married in March of 1930 before a justice of the peace in Austin, when appellant was 15 years old and Williams was 34. The couple started married life in San Saba County, where they worked at cutting cedar posts before returning to Travis County in 1931, when they moved onto the seven-acre tract, one of the two parcels in controversy in this lawsuit. A son, Charles Williams, one of the defendants below, was born to the couple in 1937, and a daughter, Betty Williams (Cloud), also a party defendant, was born in 1938.

In December of 1942 appellant brought suit against Williams and obtained a divorce in Williamson County under a judgment validity of which she seeks in this action to challenge. In her petition for divorce appellant alleged that she and Williams had no community property, and the trial court in the judgment entered in March of 1943 found "that the material allegations in the plaintiff's petition are true." In the action now on appeal appellant alleged and proved at trial that waiver of issuance and service of citation in the divorce action was signed by Mike Williams on December 19, 1942, two days *prior* to the filing of the petition on December 21.

About two and one-half months after her divorce from Williams, appellant on May 28, 1943, married Howard Nalley, who was a friend of both Williams and appellant. At the trial of the present action appellant testified that Mike Williams originated the idea of a divorce from him and appellant's marriage to Nalley, who was in the military service at that time, and that Williams persuaded Nalley to enter into the marriage with appellant for economic reasons.

Appellant explained at trial that Williams believed himself dying of tuberculosis and pressured appellant to get the divorce and marry Nalley because Williams could not provide enough to feed his family. Appellant pointed out that the children were sick, and she and the children could be cared for from Nalley's military allotment. Appellant insisted, in effect, that the marriage to Nalley was purely an economic expediency, and that she did not consummate the marriage with Nalley, but on the contrary never left Williams' bed and remained his wife until 1951 when they separated.

Appellant's testimony as to the Williams' illness, inability to provide for the family, and illness of the children was corroborated by Dollie Faglie, appellant's sister-in-law during the time appellant, subsequent to 1951, was living with Robert Faglie and had taken his name. Other witnesses contradicted the testimony of both appellant and Dollie Faglie and claimed that Mike Williams had never been sick.

Howard Nalley testified in direct rebuttal of some of the essential matters to which appellant testified. Nalley denied that Williams had any influence on Nalley in bringing about the marriage after appellant divorced Williams. In fact Nalley testified he and appellant were intimate in 1942, the year before the divorce and subsequent marriage to Nalley, and stated that he married appellant because at the time he was in love with her. In July of 1942, Nalley testified, he and Williams had a fist fight in a grocery store parking lot in Austin when, confronted by Williams, Nalley admitted to Williams that he loved Audrey, then Williams' wife. Nalley stated that he was on military duty in Tennessee in 1943 and when unable to obtain a furlough to meet appellant in Livingston, Texas, where her sister lived, he went absent without leave for eight days in order to meet and marry appellant in Livingston. Nalley denied that the marriage was never consummated, and named occasions when he and appellant had relations as "man and wife."

Appellant and Nalley married in May of 1943, and the following September 18 appellant filed suit for divorce. In her petition appellant alleged that at the time of her marriage to Nalley she was an unmarried woman and that their marriage was lawful. She also alleged that two days before filing suit, on September 16, Nalley had beaten her while in Texas on furlough and while in a drunken condition. Waiver of issuance and service of citation in this action was dated September 18, the day suit was filed, and bore Nalley's signature.

Nalley's testimony again conflicts with that of appellant. He was uncertain whether he was in Texas on furlough in September of 1943 and could not remember signing the waiver. Nalley stated that when he returned from fifteen months of overseas duty in 1945 he had no reason to believe that appellant was not still his wife and therefore was surprised to discover that she was nine months pregnant by Williams with a child born less than two weeks later. The child, Dennis Williams, is a party defendant in this case. The divorce from Nalley was granted appellant on December 10, 1945, about two months after Nalley's return from military service.

As stated earlier, two adjoining tracts of land constitute the property in controversy, the tract of four acres was conveyed by Rena Williams Flint to Mike Williams by deed dated November 1, 1943. This occurred some eight months after appellant and Williams were divorced, about four months after appellant had married Nalley, and a month subsequent to the filing of her suit for divorce against Nalley. Appellant testified that when the deed passed she and Williams were living together as man and wife, and that they were agreed that she would buy the property and put it in Williams' name. Appellant claimed that the down payment of $100 came in part from her brother, Mape Bartree, and in part from the first allotment check she received by reason of Howard Nalley's military service. Appellant testified she thereafter made monthly payments of ten dollars to the vendor until the balance of $300 was paid in full.

Appellant by her testimony took credit for most of the construction work on a rock house erected on the four-acre tract between 1943 and 1945. She testified that Aubrey Neely, a rock mason, furnished a limited amount of labor and materials, and that Mike Williams was not well enough to help with the work. In contradiction, Betty Williams Cloud testified that Neely and her father, not her mother, built the house, and this testimony was corroborated by several neighbors. Appellant testified that she and Mike Williams moved into the house in October of 1945, shortly before Dennis Williams was born, and that they were living in the house when another child, Kenneth Williams, was born to them in 1947.

The record shows that part of the four acres, a small lot, was conveyed jointly by Mike and Audrey Williams as "man and wife" in 1946 to Mape Bartree, appellant's brother, after which the lot was reconveyed to appellant and Williams, as "man and wife," in 1950. Mike Williams conveyed his interest in the same lot to appellant as his

"wife" a year later. In 1952, on June 23, appellant as Audrey Williams, "a widow, formerly the wife of . . . Mike Williams," reconveyed the lot to Mike Williams. On the same day, acting in the same capacity, appellant conveyed her interest in the seven-acre tract to Mike Williams. Appellant conceded she signed the first deed to Williams, but denied she signed the deed conveying her interest in the seven acres. Both deeds were filed for record at the same time and the same notary public took acknowledgments on both deeds.

Appellant insisted in her testimony that she lived with Mike Williams as his wife until some time in 1951 when he forced her to leave him. She testified that she miscarried a child in 1950 that Mike Williams had fathered. Appellant claimed that Williams beat her regularly, and when she became pregnant again by Williams, she began living with her sister a mile away for reasons of health. Shortly thereafter, appellant testified, she persuaded Williams to convey to her his interest in the small lot, out of the four acres, which was occupied by a small house. From that place, appellant said, she walked back and forth to care for Williams and their children. It appears that it was about this time that Robert Faglie began living with appellant, purportedly for her protection. A child, named Bobby Faglie, was born in December of 1951, but appellant insisted Williams was its father, although Williams refused to allow appellant to give the baby his name. Appellant testified that she reconveyed the small house and lot to Williams in 1952 and left the property on advice of a doctor.

Thereafter, appellant testified, she and Faglie lived at various places nearby, and appellant paid weekly visits to the four children by Williams, who were living with their father. When Williams died in 1956, their son Charles Williams was in military service, and Betty Williams Cloud and her husband George continued their care of Dennis and Kenneth Williams living in the rock house on the four acres. Appellant stated that the Clouds preferred this arrangement because of the benefits they drew from social security. Appellant had

several children by Robert Faglie over a period of years, and in 1973 Faglie brought suit for divorce alleging that he and appellant had entered into a common law marriage in February of 1951. Divorce was granted August 16, 1973.

Betty Williams Cloud testified that her mother began living with Faglie and abandoned Mike Williams and the children as early as 1949. From that time on, Mrs. Cloud stated, responsibility of caring for the two younger Williams children fell upon her and her husband. She refuted claims of her mother that appellant had frequently visited the children and helped with their care. This testimony was corroborated by George Cloud and by both Dennis and Kenneth Williams. The Clouds conceded that appellant once made demand for her two young sons, sometime in 1958 or 1959, and when refused, appellant left and "never did come back."

Transfers of parcels of the disputed realty began in 1966 and were completed in 1975. By deed dated in May of 1966, Charles and Kenneth Williams conveyed, out of the four-acre tract, a parcel of one-half acre, on which the rock house was located, to their sister Betty and her husband George Cloud in May of 1966. The next year all four children and their brother-in-law George conveyed the seven-acre tract to Westover Hills, Inc., for $12,000. In 1975 the four children of appellant sold the entire four acres to a limited partnership for $156,000. Betty Williams Cloud and her husband, at time of trial were occupying the premises under a lease from the limited partnership.

At conclusion of trial the court found that "the law and the facts" were with defendants and entered judgment that plaintiff, now appellant, take nothing by her suit. No findings of fact and conclusions of law, aside from the judgment, were filed and none requested.

Appellant brings thirty-five points of error, which in the main attack the judgment on the basis of only three claims. Appellant contends that (1) she is the widow of

Mike Williams because the judgment of divorce she obtained in 1943 was void for want of personal jurisdiction over Mike Williams; that (2) even if the judgment of 1943 be valid, she and Williams immediately thereafter established a common law marriage, irrespective of the subsequent ceremonial marriage to Howard Nalley and her subsequent relationship with Robert Faglie which ended in divorce; and that (3) even if her relationship with Mike Williams, after the divorce in 1943, was meretricious, the tract of four acres was purchased with her money and the property thereby was impressed with an express, or resulting, trust in her favor.

Secondary claims asserted by appellant are that (1) she is entitled to value of the improvements she made on the four acres, and that (2) the deed by which she conveyed to Williams her one-half interest in the seven acres in 1952 was void, entitling her to half the proceeds from sale of the tract by her children in 1967.

We consider first appellant's contention that the judgment of divorce from Williams in 1943 was void and without effect. Appellant filed that suit against Williams on December 21, 1942, in Williamson County. The record in that cause reflects that Williams signed the waiver of issuance and service of citation on December 19, 1942, two days prior to filing of the petition.

Rule 119, Texas Rules of Civil Procedure, prescribes the general form of waiver and employs this language:

> "The defendant may accept service of process, or waive the issuance or service thereof by a written memorandum signed by him, or by his duly authorized agent or attorney, *after suit is brought,* sworn to by a proper officer . . . and filed among the papers of the cause . . ." (Emphasis added) (Rule 119, as amended effective January 1, 1961)

The Rule makes it clear that the waiver must be executed *after* the suit has been filed and not before. This requirement is made jurisdictional by Article 2224, V.A.C.S., so that a waiver executed prior to filing of an action is void. See 2 McDonald,

*Texas Civil Practice,* sec. 9.02. The waiver Williams signed preceded the filing of suit by two days, was void under terms of Article 2224, and cannot support the judgment of divorce since the court did not acquire jurisdiction over the person of Williams. See 1 McDonald, sec. 1.04.

It has been held, however, that when the judgment is regular on its face and rendered by a court of general jurisdiction, the " . . . judgment does not yield to a collateral attack." *Bragdon v. Wright,* 142 S.W.2d 703, 705 (Tex.Civ.App. Texarkana 1940, writ dism'd). In that case the court stated: "A judgment rendered without acquiring jurisdiction over the defendant by some character of lawful notice, waiver or appearance is generally said to be void. But such expression is not entirely correct, because a void judgment is one without any force or effect and may for that reason be attacked in any court in any proceeding, either directly or collaterally. Though entered without jurisdiction having been in fact acquired over defendant . . . a judgment that is regular on its face and rendered by a court of general jurisdiction has a binding effect until set aside in a direct attack. Such is so for the reason that our courts accord absolute verity to the jurisdictional recitals contained in such a judgment. Such a judgment does not yield to a collateral attack." (142 S.W.2d 705, col. 1)

The judgment of divorce recited that appellant, as plaintiff in that cause, appeared in person and by attorney, " . . . and the defendant [Mike Williams], having filed a written waiver of citation herein, failed to appear . . ." Where a judgment is *collaterally* assailed, as in this appeal, the jurisdictional recitals of the judgment are not open to attack but import absolute verity. *Empire Gas & Fuel Co. v. Albright,* 126 Tex. 485, 87 S.W.2d 1092, 1096 (1935). A recitation or finding that the defendant was served, or by other means such as waiver of citation was before the court, such finding imports verity and may not be impeached by other parts of the record. *Jordan v. Texas Pacific Coal & Oil*

*Co.,* 152 S.W.2d 875, 879 (Tex.Civ.App. Amarillo 1941, writ ref'd).

The rule is different in a *direct* attack upon a judgment, permitting objections in the court which pronounced the judgment or in a higher court upon appeal, writ of error, or certiorari. *Albright, supra; Jordan, supra; Adamson v. Blackmar,* 546 S.W.2d 698, 701 (Tex.Civ.App. Austin 1977, no writ). Under the facts of this case insistence by appellant that her attack is direct can avail her nothing, though the irregularity claimed with respect to the waiver be jurisdictional. Having invoked the jurisdiction of the district court to obtain a divorce, that court having jurisdiction over the subject matter, appellant may not be permitted thereafter to question validity of the judgment of divorce for want of jurisdiction. *Spence v. State National Bank of El Paso,* 5 S.W.2d 754, 756 (Tex.Comm'n App.1928, jdgmt. adopted).

In *Spence* the court declared that "To permit one to invoke the exercise of a jurisdiction within the general powers of a court and then to reverse its orders *upon the ground that it had no jurisdiction* would be to allow one to trifle with the courts." (Emphasis added) The court described this principle as " . . . one of estoppel in the interest of a sound administration of the laws whereby the regularity or *even validity of an act* procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely *closes the mouth of the complainant."* (Emphasis added) (5 S.W.2d 756, col. 1) To these pronouncements, the court added " . . . one will not be allowed to take advantage of an error of the court which has been invited by him." See 2 McDonald, *Texas Civil Practice,* sec. 1.04, fn. 21; *Long v. Long,* 365 S.W.2d 214 (Tex. Civ.App. Fort Worth 1963, no writ); *Jett v. Sides,* 367 S.W.2d 921 (Tex.Civ.App. Waco 1963, no writ).

Appellant's contentions under her claim that the judgment of divorce from Williams in 1943 was void and not binding on her are overruled.

It is appellant's position that even if the divorce in 1943 from Mike Williams was valid and effective, they continued living together after the divorce and maintained a common law marriage that survived until Williams died thirteen years later in 1956. This contention, pleaded and pursued in district court, was impliedly rejected by the trial court in its judgment that as plaintiff below appellant take nothing.

The marriage of a man and woman may be proved under the Texas Family Code by evidence in any judicial, administrative, or other proceeding that " . . . they *agreed to be married,* and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." (Emphasis added) Texas Family Code, sec. 1.91, V.A. C.S. In the same section the Code provides that "In any proceeding in which marriage is to be proved . . . [under provisions of the section earlier stated] the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married." Section 1.91(b). The statutory provisions are recognized as an enactment of prior case law already established in this state. *Humphreys v. Humphreys,* 364 S.W.2d 177 (Tex.Sup.1963); *Ex parte Threet,* 160 Tex. 482, 333 S.W.2d 361 (1960); *Shelton v. Belknap,* 155 Tex. 37, 282 S.W.2d 682 (1955).

Appellant insists upon inapplicability of the rule here, as applied in cases which hold that there is a presumption against any agreement to marry by common law means when there has been a subsequent ceremonial marriage by one of the parties. "This suggestion of the law . . . gives way," appellant argues, "if there is an *express agreement;* that has been affirmatively shown in the testimony . . . " The express agreement referred to is based on the testimony of appellant, who when asked if there was an agreement, replied, "We came right home together [from the divorce trial at Georgetown] just like we went over there together."

Relying apparently on an assumption that since appellant's statement is undisputed, the common law marriage was established as a matter of law because there is nothing to imply, appellant on appeal asks this Court to reverse the trial court's judgment and render judgment for appellant.

■ Under Section 1.91 and settled case law, the party asserting a common law marriage has the burden to prove (1) an agreement, express or implied, between the parties to become husband and wife, (2) cohabitation pursuant to the agreement, and (3) holding out by the parties that they are in fact husband and wife. *Shelton v. Belknap, supra,* 282 S.W.2d 684 col. 1. Whether there was in fact an agreement, express or implied, is for the trier of facts to determine. *Moore v. Jordan,* 328 S.W.2d 343, 345 (Tex.Civ.App. Houston 1959, writ ref'd n. r. e.). No distinction exists between cases in which the evidence of an agreement is express and those in which the evidence is implied, and the existence of the agreement to be married remains a fact question in either instance.

The facts of the case on appeal essentially are not unlike the facts of the early case of *Walton v. Walton,* 228 S.W. 921, 922–23 (Tex.Comm'n App.1921, jdgmt. adopted) often cited in other cases as controlling. In *Walton* there was evidence of cohabitation and common reputation, elements which when proved raise an inference of an implied agreement to be married. The court pointed out that even though such evidence was uncontradicted, there was evidence also that there was a subsequent separation of the parties and one of them entered into a ceremonial marriage with another person. The court held that the implied agreement was not conclusively established but was clearly a question of fact. In the present case plaintiff entered into a ceremonial marriage with Nalley, and the testimony offered as proof that appellant and Williams lived together as man and wife and held themselves out as such was contradicted by several witnesses. An implied agreement therefore was not conclusively established, and the trier of the facts in effect found that no common law marriage between appellant and Williams after the divorce in 1943 had been established.

In *Walton,* as in this case, evidence of an express agreement to be married was introduced through the plaintiff alone, an interested witness. Appellant's reply, as pointed out earlier, when asked if there was an agreement, was simply that from Georgetown, where the divorce was granted, "We came right home together just like we went over there together." In *Walton* the court held that uncontradicted evidence of cohabitation and having children, coupled with holding themselves out as married, did not conclusively establish the fact of marriage, and that the existence of an express agreement was a question of fact. The court stressed that under the circumstances the trier of the facts should have been permitted to judge the credibility of plaintiff, who alone testified there was an agreement to marry, in determining whether there was such an agreement.

■ It is doubtful, even under liberal construction, that appellant by proper point of error has challenged sufficiency of the evidence on the issues of proof required to establish a common law marriage. Existence of an agreement to be married, either express or implied, as well as issues of cohabitation and common reputation are questions of fact, determination of which on review, if properly presented, becomes conclusive in the court of civil appeals. Art. V, sec. 6, Constitution of Texas; Art. 1820, V.A.C.S. But courts of civil appeals may make such conclusive determination only on questions of sufficiency of the evidence. *Wisdom v. Smith,* 146 Tex. 420, 209 S.W.2d 164, 166 (1948). In the absence of a proper challenge of the sufficiency of evidence on issues determined by the trial court as to existence of a common law marriage, the question of whether a common law marriage existed between appellant and Mike Williams after 1943 may not be before this Court. Under the rule of *Walton* and other cases in accord, it is clear, however, that the finding of the trial court that a common law marriage did not exist is not, under the

evidence found in the record, against the great weight and preponderance of the evidence.

The final principal contention of appellant is that the trial court erred in not holding that, by some character of trust, title in the property in dispute was vested in appellant. The courts of this state have invoked the doctrines of express and resulting trusts in vesting title to property in a woman who lived with a man and accumulated real property in conjunction with him when there was neither a ceremonial nor a common law marriage, nor a putative marriage.

To establish an express trust, appellant had the burden to show that at the time title was conveyed to Mike Williams there existed an agreement between appellant and Williams that the property would be taken in his name for the benefit of both of them. *Cluck v. Sheets,* 141 Tex. 219, 171 S.W.2d 860 (1943). To establish a resulting trust in her favor, a woman living in meretricious relations with a man at the time the land was purchased and taken in his name has the burden to prove that she contributed to the purchase price, which is done by showing that they worked together to a common purpose, that the proceeds of labor performed by them became their joint property, and that the proceeds, a specified part to which she contributed, was used to purchase the land; but no trust in her favor will arise out of the dealings between them after the vesting of title. *Hayworth v. Williams,* 102 Tex. 308, 116 S.W. 43 (1909); *Hyman v. Hyman,* 275 S.W.2d 149, 151 (Tex.Civ.App. Amarillo 1954, writ ref'd n. r. e.); *Cluck v. Sheets, supra.*

In considering whether appellant had proved the existence of an express or a resulting trust in her favor the court had before it the testimony of appellant and her sister, Ella Mae Lemons, as well as the contradictory testimony of Charles Williams. In a cause tried before the court without a jury the court, like a jury, becomes the judge of the credibility of the witnesses and the weight to be given their testimony. *Harrell v. Sunylan Co.,* 128 Tex.

460, 97 S.W.2d 686, 689 (1936). In light of the sharp conflict between appellant's testimony and that of other witnesses pertaining to the circumstances of her divorce from Williams, her subsequent relationship with him, and her marriage to Howard Nalley, the trial court understandably could find that appellant had not met her burden of proof in an attempt to establish an express or a resulting trust in the realty. Identical considerations are applicable to an attempt to establish a partnership relation between the parties. *Lovell v. Lovell,* 202 S.W.2d 291 (Tex.Civ.App. San Antonio 1947, no writ); *Hyman v. Hyman, supra.* Recovery of the value of any improvements would likewise be precluded in the absence of pleadings and proof.

No rights in the property flow from appellant's meretricious relationship with Mike Williams, without proof of an express trust, or a resulting trust in her favor, or existence of a partnership. In the absence of proof of one of these three theories, the courts refuse to award anything to a pretended wife who knows the nature of the relationship. *Lawson v. Lawson,* 30 Tex. Civ.App. 43, 69 S.W. 246, 247 (1902, writ ref'd). "In such cases," the court in *Lawson* said, "the courts will leave the parties as they find them, on the same principle—that they refuse to enforce any other contract which by reason of its objects, or the nature of the consideration upon which it rests, is violative of law or against public policy." In accord, see: *Meador v. Ivy,* 390 S.W.2d 391, 394 (Tex.Civ.App. San Antonio 1965, no writ).

Appellant's attempt to recover half of the proceeds from sale of the seven-acre tract must fail also, for reasons additional to those applicable to the four-acre tract. As plaintiff below appellant pleaded that she did not sign the deed of 1952, by which her interest in the tract was conveyed to Williams, and appellant testified to the same effect. But appellant did not deny execution by verified affidavit as required by Rule 93(h), Texas Rules of Civil Procedure. In the absence of denial by sworn plea, the instrument was received in evidence as fully proved.

*affirmed*

Appellant does not claim on appeal that the deed was a forgery, but only that the conveyance was an unlawful transfer of a community interest by one spouse to the other. Upon the trial court's finding that appellant and Williams were not married at the time the deed was made, the court correctly denied the claim to proceeds of sale of the seven acres later by her children.

■ Appellant challenges admission of certain testimony of Betty and George Cloud and of Charles Williams concerning matter which appellant insists was accepted in violation of the Texas Dead Man's Statute (Art. 3716, V.A.C.S.). We find the contention without merit, since some of the testimony was admitted without objection and part of it we regard as harmless, or its substance was received from other witnesses not within the class named in the statute. The contentions under these points are overruled.

We have carefully examined the record and considered all points of error and contentions made thereunder affecting the controlling issues. We conclude that the judgment of the trial court should be affirmed and we accordingly affirm the judgment.

Affirmed.